LaMonica Herbst & Maniscalco, LLP
3305 Jerusalem Avenue
Wantagh, New York 11793
Gary F. Herbst, Esq.
Adam P. Wofse, Esq.
(516) 826-6500

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re:

FROZEN FOODS PARTNERS, LLC

                    Chapter 11
                    Case No.: 21-11897-MG

          Debtor.
---------------------------------------------------------X

## DECLARATION OF JEFF LICHTENSTEIN, CHIEF EXECUTIVE OFFICER OF FROZEN FOOD PARTNERS, LLC, PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2

I, Jeff Lichtenstein, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct:

1. I am the Chief Executive Officer of Frozen Foods Partners, LLC (the "Debtor") of the above-named Debtor having voluntarily filed a petition for reorganization under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on November 1, 2021 (the "Filing Date").

2. I submit this declaration (the "Declaration") in support of the Debtor's voluntary petition (the "Petition") for reorganization under Chapter 11 of the Bankruptcy Code, pursuant to Rule 1007-2 of the Local Rules of Bankruptcy Procedure for the Bankruptcy Court for the Southern District of New York (the "Local Rules"), which requires certain information related to the Debtor, which is set forth below and in certain other filings made on behalf of the Debtor.

1

3. Except as otherwise noted herein, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, or my opinion based upon my experience and knowledge of the Debtor's operation and financial condition.

4. Unless otherwise indicated, the financial information contained herein is unaudited.

5. The Debtor will continue to remain in possession of its assets, operate its business and manage its affairs as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

6. No trustee, examiner or committee of creditors has been appointed in this case, except a subchapter V trustee has been appointed.

7. The Debtor has elected to file this case under subchapter V of Chapter 11 of the Bankruptcy Code, the Small Business Debtor Reorganization Act.

8. Due to recent financial challenges, the Debtor has elected to file this Chapter 11 case. The Debtor intends to propose an arrangement for reorganization pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

Local Rule 1007-(a)(1) Representations

A. *The Nature of the Debtor's Business Operations and Ownership Structure*

9. The Debtor is a Delaware limited liability company, which was established in 2015. The Debtor is a consumer products company engaged in the production, distribution and marketing of frozen skillet meals under multiple consumer brands. The Debtor offers a diversified portfolio of frozen products including meal kits, skillet meals, combination of proteins, sauces, pastas and vegetables, Asian, Mediterranean cuisine as well as authentic Latin specialties. Our products offer

quality dining solution for working families and young adults. The Debtor's brands include Gourmet Dining, Rosetto, La Sabrosa, and Tru Earth, which can presently be found in many retailers, including Associated Grocers, SuperValu, as well as private label brands.

10. The Debtor is privately owned limited liability company. Steven Sands, Martin Sands, Mark Suwyn, and Jeff Lichtenstein constitute the Board of Managers. Genesis Merchant Partners LP and Genesis Merchant Partners II LP collectively own approximately 72% of the membership equity in the Debtor. Several Class A Preferred members own 28.6% of the Debtor. The largest Class A owners are entities owned by Steven Sands and Martin Sands, each of whom sits on the Board of Managers. The next largest Class A owner is Juan Carlos Pena a/k/a Carlos Pena, the former Chief Executive Officer of the Debtor.

11. The Debtor does not have any shares of stock that are publicly held, such that Local Rule 1007-2(a)(7) is inapplicable.

B. *Events Leading to the Chapter 11 Filing*

12. During the first half 2020 sales for the Debtor reached a record $17.5 million. The Debtor was profitable for that half as the Covid 19 outbreak helped drive increased sales for quality frozen foods. For the second half of 2020 sales decreased to $14.5 million, with a noticeable decrease in sales and profit towards the end of the year when prior management significantly changed the recipe of several of the core products to cut costs by replacing the "use as you like" sauce in each bag with a one-size "pellet". The sales for the 2020 year closed at $31,785,830.58, resulting in a net loss of $510,863.03.

13. During the first half of 2021 sales dropped precipitously to $10,552,149.80 primarily due to the recipe change, the loss of a co-packer for several SKU's made off-site, and the Debtor absorbing price increases across its supply chain since inception without passing them onto its customers through increases in the prices for which its goods are sold, which collectively

3

resulted in a loss for the half-year of $1,949,028.67.

14. Cash flow challenges starting in the third quarter of 2021 caused the Board of Managers to contact several turnaround experts. In August 2021 the Board of Managers was introduced to Jeff Lichtenstein and Mike Goose of Next In Natural, a boutique food management company for an assessment of the business challenges.

15. Jeff Lichtenstein and Mike Goose recommended that the Board of Managers undertake certain immediate triage measures and a comprehensive plan to turnover around the Debtor's fortunes over a period of six (6) months.

16. The Board of Managers terminated the former Chief Executive Officer Carlos Pena for cause on September 2, 2021 and two other officers, and then appointed Jeff Lichtenstein and Mike Goose as Chief Executive Officer and Chief Operating Officer, respectively, on September 6, 2021.

17. Following a period in which the Next In Natural team provided assistance on a pro bono basis, on or about October 1, 2021 the new management team, supported by Next In Natural, began to immediately implement the turnaround plan working tirelessly in exacting detail starting with closing a New Jersey "division" on day one. This "division" was losing $1-1.5 million per year without the Debtor realizing any pecuniary gain from paying the operating costs of the "division". New management is also examining whether the Debtor was funding operations of unrelated entities conducting business from the same location as the New Jersey "division", namely a food manufacturing business (King Foods) and distribution businesses (Nijama), without the knowledge and consent of the Board of Managers.

18. Outreach efforts were promptly made to suppliers and vendors to present the turnover plan and to request flexibility with payment terms. Summar Financial, LLC ("Summar"), the Debtor's receivable lender, and most of the Debtor's suppliers were receptive to

working with the new management team while it navigated through a challenging period. Only two creditors were wholly resistant to entertaining the Debtor's turnaround plan or exploring near term payment flexibility, namely the Debtor's equipment lender, Gordon Brothers Commercial & Industrial, LLC ("Gordon Brothers"), and the Debtor's landlord, First Industrial Investment II, LLC ("First Industrial"). To the contrary, each warned the Debtor that if it was late in satisfying the payment obligations due them the Debtor would suffer severe consequences, including, but not limited to, the seizure and sale of the Debtor's equipment, and eviction. During the several year term in which the Debtor maintained relationships with these creditors, the Debtor maintained its equipment in top condition and made reasonable improvements to the building owned by First Industrial.

19. The Debtor's accounts receivable is deposited into a lock box controlled by Summar. Advances to the Debtor from the collections slowed down in early September and halted entirely on September 21, 2021. Upon inquiring with Summar, the Debtor learned that the cessation of the advances was precipitated by a purported breach of contract arising from the termination of the former Chief Executive Officer, Carlos Pena, notwithstanding that Summar had previously conveyed that it welcomed new management. Summar advised me that the reversal of support arose from pressure exerted by Iron Horse Credit LLC ("Iron Horse"), while Iron Horse has told me that Summar was responsible for the cessation of the advances.

20. The Board of Managers raised emergency funding to enable the Debtor to make payroll since that time. Summar persists in refusing to work with the Debtor by releasing funds. Notwithstanding that the debt owed by the Debtor to Summar is believed to have been satisfied, Summar continues to collect and withhold funds and is believed to be disbursing funds to Iron Horse, as well as assessing the Debtor with fees despite promising Debtor that they would "go easy on us".

21. Following his departure, it became necessary for the Debtor to send Carlos Pena a notice to cease and desist from communication with the Debtor's employees.

22. Since the termination of Carlos Pena First Industrial has seized approximately $230,402.57 of the Debtor's $250,000.00 security deposit to satisfy the Debtor's rent arrears, transmitted purported termination and eviction notices, and appeared at the Kentucky premises with other creditors.

23. As of the Filing Date, there are multiple actions or proceedings pending against the Debtor or their property where a seizure of property may be imminent or the Debtor's interests may be substantially impaired. These actions include: (a) an action and motion to appoint a receiver filed in the Muhlenberg Circuit Court, Commonwealth of Kentucky, under case no. 21-CI-00398, by Gordon Brothers, which is scheduled to be heard on November 1, 2021 at 1:00 p.m. CST; (b) a private sale of substantially all of the Debtor's assets on November 2, 2021 by Iron Horse at an undisclosed time and location; and (c) an action filed by First Industrial, Debtor's landlord, in the District Court of Muhlenberg County, Commonwealth of Kentucky, under case no. 21-C-00425, in which an eviction hearing is scheduled for November 8, 2021 at 10:00 a.m. CST.

24. The Debtor has its business office at 745 Fifth Avenue, Suite 500, New York, New York 10151[1].

25. The Debtor leases more than 300,000 square feet of space used as its manufacturing plant located at 600 Greene Dr., Greenville, Kentucky 42345, of which less than 50,000 square feet is presently in active use by the Debtor.

26. The Debtor's assets consist primarily of accounts receivable, inventory, manufacturing, packaging and refrigeration equipment, and various office supplies and equipment

---

1 The Debtor is not a tenant under a lease for the business office.

used in the ordinary course of business. The Debtor's hard assets are primarily located at the Kentucky premises. As noted above, Summar is collecting and in possession of the Debtor's accounts receivable.

27. As of the Filing Date, there were approximately 52 employees and independent contractors of the Debtor, including its Chief Executive Officer.

28. As required by Local Rule 1007-2(a)(12), the senior management of the Debtor consists of: (a) Jeff Lichtenstein, Chief Executive Officer; (b) Mike Goose, Chief Operating Officer [2]; (c) Laura Brandt, Commissary General Manager; (d) Heidi Norton, Operations Coordinator; (e) Jackie Kelly, Accounting Coordinator; and (f) Fernando Chavez, Business Development Coordinator.

29. Jeff Lichtenstein receives annual compensation of approximately $250,000.00. Mike Goose receives annual compensation of approximately $150,000.00. Laura Brandt receives annual compensation of approximately $110,000.00. Heidi Norton receives annual compensation of approximately $54,000.00. Jackie Kelly receives annual compensation of approximately $49,000.00. Fernando Chavez receives annual compensation of approximately $127,200.00. All of the foregoing compensation is paid by the Debtor.

30. The Debtor has an aggregate, estimated average weekly payroll of $37,500.00, of which approximately $14,234.62 is attributable to management compensation. The Debtor's estimated payroll for the next thirty (30) days is expected to be approximately $150,000.00.

31. The anticipated amount of income over the next 30 days will be approximately $1,106,024.00, the anticipated amount of expenses over the next 30 days will be approximately $873,774.00, and the estimated profit over the next 30 days will be approximately $232,250.00.

---

[2] Messrs. Lichtenstein and Goose joined the senior management team in early September 2021. The other senior managers are long-time employees of the Debtor. Messrs. Lichtenstein and Goose replaced three prior officers, namely the Chief Executive Officer, national sales manager, and an operations manager, resulting in a net salary savings of $145,000.00 per year.

32. The Debtor is separately filing a schedule of the twenty (20) largest unsecured claims of the Debtor's estate, as required by Local Rule 1007-2(a)(4). The Debtor estimates that the general unsecured debt due its 20 largest unsecured creditors total approximately $2,396,182.71 and that it owes its largest non-insider secured creditors approximately $1.9 million.

33. It is my understanding that Iron Horse has asserted a blanket security interest in and to most of the Debtor's assets. The Debtor believes that Iron Horse is owed the approximate sum of $1.5 million dollars and that it is adequately protected by virtue of the assets described below.

34. Gordon Brothers is secured against certain collateral owned by the Debtor, predominantly the Debtor's equipment and furniture, and was owed $429,240.00 as of June 30, 2021, the date on which a certain forbearance agreement expired. The value of the Debtor's collateral is believed to significantly exceed the amount of the debt owed to Gordon Brothers by the Debtor's calculations or even amount demanded by Gordon Brothers in the action commenced by them in the Commonwealth of Kentucky.

35. Summar is the Debtor's factor and was secured against the Debtor's accounts receivable. Summar has subordinated itself to Gordon Brothers, pursuant to a subordination agreement dated August 24, 2015. As noted above, the Debtor believes that any debt due Summar has been satisfied in that Summar has withheld any further advances from the Debtor and retained the Debtor's accounts receivable. Summar has also entered into an intercreditor agreement with the Debtor and Iron Horse to clarify the respective priorities of Iron Horse and Summar in and to certain of the Debtor's assets, dated December 24, 2019.

36. As of the Filing Date, the Debtor's aggregate assets consisted of the following:

(a) Funds in bank accounts in the aggregate approximate sum of $9,123.30;

(b) Funds in the bank account over which Summar has control in the aggregate approximate sum of $30,264.78;

(c) Accounts receivable in the aggregate approximate sum of $1,356,636.17 (under 60 days) and $809,971.00 (over 60 days);

(d) Inventory in the aggregate approximate sum of $3.6 million;

(e) Work in progress in the aggregate approximate sum of $859,463.13;

(f) Packing in the aggregate approximate sum of $951,606.28;

(g) Production and warehouse equipment in the aggregate approximate sum of $1.5 million liquidation value and $5 million going concern value;

(h) Security deposit balance as of October 31, 2021 held by First Industrial in the approximate aggregate sum of $19,597.43;

(i) Miscellaneous office equipment and non-secured production equipment worth no less than $173,817.18; and

(j) goodwill valued no less than $3.7 million.

37. All records of the Debtor are in the possession of the Debtor, under the declarant's control or in the possession of the Debtor's accountant. The Debtor owns no assets that are physically located outside the United States.

38. Local Rule 1007-2(a)(2) is not applicable because the Debtor's case was not originally commenced under Chapter 7 or 13.

39. Local Rule 1007-2(a)(3) is not applicable because no committee was organized prior to the Petition Date.

40. The Debtor commenced the Chapter 11 case to: (a) obtain the benefits of the automatic stay provided under the Bankruptcy Code and avail the company the breathing spell necessary to continue to operate the businesses; (b) address the resolution of obligations to the creditors; (c) resolve the claims, if any, to the above-mentioned secured creditor(s); and (d) attempt an orderly reorganization to maximize value for the creditors and other parties in interest.

41. The Debtor believes that with the protections of this Court and the Bankruptcy Code, the Debtor will be able to restructure its business arrangements and debts, and propose a meaningful and acceptable plan of reorganization.

**WHEREFORE**, declarant requests that the Debtor shall be authorized to continue in the operation and management of its business and affairs. I declare, pursuant to 28 U.S.C. § 1746, under the penalty of perjury that the foregoing is true and correct.

Dated:   November 1, 2021

> *s/ Jeff Lichtenstein*
> Jeff Lichtenstein
> Chief Executive Officer of
> Frozen Foods Partners, LLC

M:\Documents\Company\Cases\Frozen Foods Partners\LR 1007-2 declaration.docx